UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

VINCENT WESTON,

                Petitioner,                                 Hon. Paul L. Maloney

v.                                                       Case No. 5:06-CV-206

JOHN PRELESNIK,

                Respondent.

_____/

## REPORT AND RECOMMENDATION

        This matter is before the Court on Weston's petition for writ of habeas corpus. In accordance with 28 U.S.C. § 636(b) authorizing United States Magistrate Judges to submit proposed findings of fact and recommendations for disposition of prisoner petitions, the undersigned recommends that Weston's petition be **denied**.

## BACKGROUND

        As a result of events which occurred on October 21, 1999, Petitioner was charged with one count of first degree murder, two counts of assault with intent to commit murder, one count of being a felon in possession of a weapon, and one count of possessing a firearm during the commission of a felony. (Trial Transcript, July 11, 2001, 94-97). Several individuals testified at Petitioner's bench trial, the relevant portions of which are summarized below.

1

**Melvin Berry**

At approximately 10:30 p.m. on October 21, 1999, Melvin Berry arrived at Mandell Moore's residence at 4367 Beaconsfield. (Trial Transcript, July 10, 2001, 7-11). When Berry arrived, there were three other people present, Calvin Berry, Mandell Moore, and Petitioner. (Tr. 11). When Melvin Berry arrived, Petitioner and Calvin Berry were drinking alcohol and Moore was playing a video game. (Tr. 12-13). The four men were all sitting in the living room. (Tr. 15). Melvin Berry sat down and began talking on the telephone. (Tr. 14).

While he was talking on the telephone, Berry heard a gunshot. (Tr. 21-22). When Berry looked up to see where the gunshot originated, he noticed that Petitioner was aiming a handgun at him. (Tr. 22-23). Berry then looked down at his hand and saw that "blood was coming out of [his] side and [his] hand." (Tr. 23-24). Berry realized that he had been shot in the wrist and that the bullet then entered his chest. (Tr. 23-24).

Petitioner then shot Calvin Berry in the face from a distance of approximately two feet. (Tr. 25). Moore began to run toward the rear of the house. (Tr. 25). Petitioner "started chasing him through the house shooting." (Tr. 26). Petitioner fired "three or four" shots at Moore. (Tr. 26). Melvin Berry tried to exit the house through the front door, but before he was able to unlock the door Petitioner returned to the living room and began firing at him. (Tr. 27-29). Petitioner then exited the house through a rear exit. (Tr. 29).

**Jerome Ward**

At approximately 11:00 p.m. on October 21, 1999, a man rang the doorbell to Ward's house. (Trial Transcript, July 10, 2001, 40-41). When Ward answered the door he was greeted by

a man who was bleeding from the stomach and chest.  (Tr. 41).  The man said that he had been playing video games with his friends when he was shot.  (Tr. 41-44).

**Frank Horan**

As of October 21, 1999, Horan was employed as a police officer with the City of Detroit.  (Trial Transcript, July 10, 2001, 44).  At approximately 11:50 p.m. that evening, Officer Horan was dispatched to 4367 Beaconsfield to investigate a shooting.  (Tr. 45-51).  Upon his arrival, Officer Horan discovered a man with a fatal gunshot wound to the head.  (Tr. 46).  Horan retrieved from the deceased man $1,262 in cash and two pagers.  (Tr. 51).  Officer Horan also recovered several cell phones, pagers, and weapons, including a .357 revolver in which five spent shell casings were discovered.  (Tr. 47-51).

**Mandell Moore**

On the morning of October 21, 1999, Petitioner accompanied Moore to a bank, where Moore cashed a check in the amount of $3,800.  (Trial Transcript, July 11, 2001, 66-69).  Moore received cash which he displayed to Petitioner.  (Tr. 69).  Later that evening, Petitioner, Calvin Berry, and Melvin Berry were all at Moore's residence.  (Tr. 69).

Moore was in the living room playing a video game when he heard a gunshot.  (Tr. 69-70).  Moore turned around and saw Petitioner holding a handgun.  (Tr. 70).  Petitioner fired another shot, at Melvin Berry or Calvin Berry.  (Tr. 71).  Moore immediately "jumped up" and "started running towards the kitchen."  (Tr. 71).  As Moore was running, Petitioner shot him in the neck and hand. (Tr. 71-72).  Moore fell to the floor, at which point Petitioner approached and began

firing shots at Moore, at least one of which "grazed" Moore in the head. (Tr. 72-73). Petitioner then returned to the living room. (Tr. 73). Moore was then able to escape through a window, at which point he ran to a nearby house to seek help. (Tr. 73-75).

Petitioner was charged with first degree murder for the killing of Calvin Berry, assault with the intent to commit murder for the shooting of Melvin Berry and Mandell Moore, being a felon in possession of a firearm, and possession of a firearm during the commission of a felony. (Tr. 94-97). Following the presentation of evidence, the trial judge found Petitioner guilty of second degree murder for the killing of Calvin Berry. (Tr. 94-95). With respect to the shooting of Melvin Berry, the judge found Petitioner guilty of assault with the intent to do great bodily harm less than murder. (Tr. 95-96). As for the shooting of Mandell Moore, Petitioner was found guilty of assault with the intent to commit murder. (Tr. 96). Petitioner was also found guilty of being a felon in possession of a weapon and possessing a firearm during the commission of a felony. (Tr. 96-97). Petitioner was sentenced to 40-80 years on the murder conviction, 20-40 years on the assault with the intent to commit murder conviction, 5-10 years on the assault with the intent to do great bodily harm less than murder conviction, 2-5 years on the felon in possession charge, and two years for possessing a firearm during the commission of a felony. (Sentencing Transcript, August 2, 2001, 6-8). Petitioner later appealed his convictions in the Michigan Court of Appeals, asserting the following claims:

> I.      Where Mr. Weston's guidelines were based on materially false information his sentence violates his constitutional due process rights to be sentenced on the basis of accurate information, Mr. Weston is entitled to resentencing.
>
> II.     If trial counsel waived Mr. Weston's challenges to the inaccurately scored sentencing guidelines, then Mr.

> Watson is entitled to resentencing because he was
> deprived of his state and federal constitutional rights
> to effective assistance of counsel at sentencing.

The Michigan Court of Appeals affirmed Petitioner's conviction. *People v. Weston*, No. 238168, Order (Mich. Ct. App., Feb. 18, 2003). Asserting the same two claims, Petitioner moved in the Michigan Supreme Court for leave to appeal. The court denied Petitioner's request, stating that "we are not persuaded that the questions presented should be reviewed by this Court." *People v. Weston,* No. 123669, Order (Mich., Oct. 31, 2003).

Petitioner subsequently filed in the trial court a motion for relief from judgment, asserting claims of ineffective assistance of counsel and failure by the trial court to grant his motion for directed verdict. The trial court denied Petitioner's motion on the ground that he "has failed to establish entitlement to relief under MCR 6.508(D)(3)(b)(i)." *People v. Weston*, No. 01-00933, Opinion and Order (Third Cir. Ct., Crim. Div., Sep. 20, 2005). Petitioner appealed this determination to the Michigan Court of Appeals, asserting the following claims:

> I.   Defendant was denied his Sixth and Fourteenth [Amendment] right to a fair trial due to ineffective assistance of counsel whereas, by counsel's failure to present a defense; by counsel's failure to present expert witness testimony; by counsel's failure to obtain witness medical records to impeach his testimony; by counsel's failure to investigate; by counsel's failure to properly cross-examine prosecution witnesses.
>
> II.  Trial court erred in denying Defendant's motion for directed verdict, whereas the evidence was insufficient to support the offense for which the Defendant was charged; trial court erred in using improper standard in ruling on directed verdict; trial court's finding of facts are clearly erroneous, contradictory, and unsupported by fact.

III. Defendant was denied his Fourteenth Amendment right to due process and equal protection due to ineffective assistance of appellate counsel, whereas by appellate counsel's failure to provide Defendant a copy of the trial transcripts; appellate counsel's failure to raise clear and obvious issues that arose at trial; appellate counsel's failure to investigate; appellate counsel's violation of administrative order of the Michigan Supreme Court.

The court denied Petitioner's motion "for failure to meet the burden of establishing entitlement to relief under MCR 6.508(D)." *People v. Weston*, No. 266543 (Mich. Ct. App., June 22, 2006). Asserting the same claims, Petitioner moved in the Michigan Supreme Court for leave to appeal. Petitioner's motion was denied because he "failed to meet the burden of establishing entitlement to relief under MCR 6.508(D)." *People v. Weston*, No. 131837 (Mich., Nov. 29, 2006). On December 11, 2006, Petitioner initiated the present action in which he asserts the following claims:

I. Petitioner was denied his Sixth and Fourteenth Amendment right to a fair trial due to ineffective assistance of trial counsel, whereas, by trial counsel's failure to present a defense; trial counsel's failure to present expert witness testimony; trial counsel's failure to obtain witness medical records to impeach his testimony; trial counsel's failure to investigate; trial counsel's failure to properly cross-examine prosecution witness.

II. The trial court erred, abuse of discretion in denying Petitioner's motion for directed verdict, whereas the evidence was insufficient to support the offense for which Petitioner was charged; trial court erred in using improper standard in ruling on directed verdict; trial court's finding of facts are clearly erroneous, contradictory, and unsupported by fact.

III. Petitioner was denied his Fourteenth Amendment right to due process and equal protection due to

ineffective assistance of appellate counsel, whereas by appellate counsel's failure to provide Petitioner a copy of trial transcript; appellate counsel's failure to raise clear and obvious issues that arose at trial; appellate counsel's failure to investigate; appellate counsel's violation of administrative order of the Michigan Supreme Court.

## **STANDARD OF REVIEW**

Weston's petition is subject to the provisions of the Antiterrorism and Effective Death Penalty Act (AEDPA), as it amended 28 U.S.C. § 2254. The AEDPA amended the substantive standards for granting habeas relief under the following provisions:

(d)     An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim —

    (1)     resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States, or

    (2)     resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

The AEDPA has "modified" the role of the federal courts in habeas proceedings to "prevent federal habeas 'retrials' and to ensure that state-court convictions are given effect to the extent possible under law." *Bell v. Cone*, 535 U.S. 685, 693 (2002).

Pursuant to § 2254(d)(1), a decision is "contrary to" clearly established federal law when "the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a

question of law or if the state court decides a case differently than [the Supreme] Court has on a set of materially indistinguishable facts." *Williams v. Taylor*, 529 U.S. 362, 412-13 (2000); *see also, Lancaster v. Adams*, 324 F.3d 423, 429 (6th Cir. 2003).

Prior to *Williams*, the Sixth Circuit interpreted the "unreasonable application" clause of § 2254(d)(1) as precluding habeas relief unless the state court's decision was "so clearly incorrect that it would not be debatable among reasonable jurists." *Gordon v. Kelly*, 2000 WL 145144 at *4 (6th Cir., February 1, 2000); *see also*, *Blanton v. Elo*, 186 F.3d 712, 714-15 (6th Cir. 1999). The *Williams* Court rejected this standard, indicating that it improperly transformed the "unreasonable application" examination into a subjective inquiry turning on whether "at least one of the Nation's jurists has applied the relevant federal law in the same manner" as did the state court. *Williams*, 529 U.S. at 409.

In articulating the proper standard, the Court held that a writ may not issue simply because the reviewing court "concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly." *Williams,* 529 U.S. at 411. Rather, the Court must also find the state court's application thereof to be *objectively* unreasonable. *Bell*, 535 U.S. at 694; *Williams*, 529 U.S. at 409-12. Accordingly, a state court unreasonably applies clearly established federal law if it "identifies the correct governing legal rule from [the Supreme] Court's cases but unreasonably applies it to the facts of the particular. . .case" or "if the state court either unreasonably extends a legal principle from [the Supreme Court's] precedent to a new context where it should not apply or unreasonably refuses to extend that principle to a new context where it should apply." *Lancaster*, 324 F.3d at 429 (quoting *Williams*, 529 U.S. at 407).

8

Furthermore, for a writ to issue, the Court must find a violation of Supreme Court authority. The Court cannot look to lower federal court decisions in determining whether the relevant state court decision was contrary to, or involved an unreasonable application of, clearly established Federal law. *See Harris v. Stovall*, 212 F.3d 940, 943-44 (6th Cir. 2000).

Pursuant to 28 U.S.C. § 2254(d)(2), when reviewing whether the decision of the state court was based on an unreasonable determination of the facts in light of the evidence presented, the factual findings of the state court are presumed to be correct. *See Warren v. Smith*, 161 F.3d 358, 360 (6th Cir. 1998) (citing 28 U.S.C. § 2254(e)(1)). Petitioner can rebut this presumption only by clear and convincing evidence. *Id.*

In certain circumstances, however, the deferential standard articulated above does not apply. First, if the state court resolves a particular claim but fails to articulate its analysis, the Court must apply "modified AEDPA deference." *Vasquez v. Jones*, 496 F.3d 564, 569-70 (6th Cir. 2007). Under this standard, "the court conducts a 'careful' and 'independent' review of the record and applicable law, but cannot reverse 'unless the state court's decision is contrary to or an unreasonable application of federal law.'" *Id.* at 570. However, where the state court has altogether failed to review a particular claim, such is reviewed de novo. As the Sixth Circuit has indicated, where the state court clearly did not address the merits of a claim, "there are simply no results, let alone reasoning, to which [the] court can defer." *McKenzie v. Smith*, 326 F.3d 721, 727 (6th Cir. 2003). In such circumstances, the court conducts a *de novo* review. *Id.*; *see also Wiggins v. Smith*, 539 U.S. 510, 533-35 (2003) (reviewing habeas issue *de novo* where state courts had not reached the question); *Maples v. Stegall*, 340 F.3d 433, 437 (6th Cir. 2003) (recognizing that *Wiggins* established *de novo* standard of review for any claim that was not addressed by the state courts).

**ANALYSIS**

I.          **Procedural Default**

As noted above, Petitioner failed to present the claims asserted in his habeas petition on direct appeal in the state courts. Instead, Petitioner first asserted these claims in post-conviction motions for relief. Finding that Petitioner had failed to comply with relevant state procedure, the state courts declined to address the merits of these particular claims. Respondent asserts that this Court is likewise barred, by the procedural default doctrine, from addressing the merits of Petitioner's habeas claims.

Under the procedural default doctrine, federal habeas review is barred where a state court declined to address Petitioner's claims because of a failure to satisfy state procedural requirements. *See Coleman v. Thompson*, 501 U.S. 722, 729-30 (1991). Where Petitioner's claims have been procedurally defaulted, the state court judgment rests on an independent and adequate state ground precluding review by a federal court. *See Coleman*, 501 U.S. at 750-51; *Wainwright v. Sykes*, 433 U.S. 72, 81 (1977); *Harris v. Reed*, 489 U.S. 255, 262 (1989).

The Sixth Circuit employs a multi-part test to determine if a petitioner has procedurally defaulted a particular issue: (1) there must exist a state procedural rule that is applicable to the claim and with which the petitioner failed to comply, (2) the state court must have actually enforced the state procedural rule, and (3) the default must constitute an "independent and adequate" state ground on which the state can rely to foreclose review of a federal constitutional claim. *See Williams v. Bagley*, 380 F.3d 932, 966 (6th Cir. 2004).

It must be remembered, however, that for the procedural default doctrine to apply,

"the last state court rendering a judgment in the case must have based its judgment on the procedural default." *Simpson v. Jones*, 238 F.3d 399, 406 (6th Cir. 2000). Furthermore, review by a state court of a procedurally defaulted claim to prevent manifest injustice does not constitute a review on the merits sufficient to excuse procedural default. *See Lundgren v. Mitchell*, 440 F.3d 754, 765 (6th Cir. 2006) ("a state court's plain error analysis does not save a petitioner from procedural default").

If Petitioner has procedurally defaulted a particular claim, federal habeas review is available only if he can establish either (1) the existence of cause for his default and actual prejudice resulting therefrom, or (2) that the failure to consider the merits of the claim will result in a fundamental miscarriage of justice. *See Bagley*, 380 F.3d at 966 (citing *Coleman*, 501 U.S. at 750).

With respect to cause, Petitioner must demonstrate the existence of some objective factor, external to the defense, which impeded his efforts to comply with the applicable procedural rule. *See Murray v. Carrier*, 477 U.S. 478, 488 (1986); *Johnson v. Wilson*, 187 Fed. Appx. 455, 458 (6th Cir., June 16, 2006). To establish that a miscarriage of justice would result from the failure to review his procedurally defaulted claims, Petitioner must make a "colorable showing of factual innocence." *McCleskey v. Zant*, 499 U.S. 467, 495 (1991). To satisfy this requirement Petitioner must demonstrate the existence of new and reliable evidence, not presented at trial, which establishes that some constitutional error "probably resulted" in the conviction of an innocent person. *See Schlup v. Delo*, 513 U.S. 298, 324-27 (1995). The evidence must show that it is "more likely than not that no reasonable juror would have convicted him in light of the new evidence." *Id.* at 326-27.

Michigan Court Rule 6.508 provides that a defendant may not collaterally attack a conviction based upon claims that were decided against him in a prior appeal or that could have been

raised in a prior appeal. M.C.R. 6.508(D)(2)-(3). With respect to claims which could have been raised in a prior appeal, a defendant is entitled to relief only if he can establish both "good cause" for failing to assert the issue previously and "actual prejudice" resulting therefrom. M.C.R. 6.508(D)(3). In this context, "actual prejudice" is defined as a "reasonably likely chance of acquittal" or an "irregularity so offensive to the maintenance of a sound judicial process that the conviction should not be allowed to stand." M.C.R. 6.508(D)(3)(a)-(b).

The Sixth Circuit has held that denial of leave to appeal on the basis that a petitioner "failed to meet the burden of establishing entitlement to relief under MCR 6.508(D)," constitutes a sufficient determination that the court's conclusion was based on procedural default. *See Burroughs v. Makowski*, 282 F.3d 410, 414 (6th Cir. 2002). Furthermore, Rule 6.508(D), regularly followed since 1990, constitutes an independent and adequate state ground, the reliance on which precludes federal review of those issues against which it is applied. *Simpson*, 238 F.3d at 407.

In claims I and II, Petitioner asserts that his trial counsel rendered ineffective assistance, the trial court improperly denied his motion for directed verdict, and there does not exist sufficient evidence to support his convictions for second degree murder, assault with the intent to commit murder, and assault with the intent to do great bodily harm less than murder. Petitioner did not assert these claims in his direct appeal as of right. He did, however, present these claims in his post-conviction motions for relief. As previously noted, Petitioner's motion for relief from judgment was denied by the Michigan Court of Appeals and the Michigan Supreme Court on the ground that Petitioner failed to comply with Michigan Court Rule 6.508(D). Petitioner has, therefore, procedurally defaulted these particular claims.

The Court reaches a different conclusion with respect to Petitioner's ineffective

assistance of appellate counsel claims asserted in habeas claim III. Petitioner was represented by the same attorney on direct appeal before the Michigan Court of Appeals and the Michigan Supreme Court. While Petitioner did not assert any claim of ineffective assistance of appellate counsel on direct appeal, he cannot have been expected to do so considering that he was represented at the time by the attorney whose performance he now challenges. Thus, the Court finds that Petitioner has not procedurally defaulted his claims of ineffective assistance of appellate counsel because Petitioner could not have asserted such claims on direct appeal. *See* M.C.R. 6.508(D). These particular claims are examined below.

With respect to the claims asserted in claims I and II of his habeas petition, Weston has failed to establish that good cause exists for his failure to properly raise these issues on his direct appeal as of right. However, even if the Court assumes that Petitioner can demonstrate good cause, he is still not entitled to relief because he cannot establish that he will suffer prejudice or that a fundamental miscarriage of justice will result from the Court's failure to consider these claims, as they are without merit.

A.       Ineffective Assistance of Trial Counsel

Petitioner asserts that his trial counsel was ineffective for failing to: (1) present a defense; (2) present expert witness testimony; (3) obtain witness medical records for impeachment purposes; (4) investigate; (5) properly cross-examine a prosecution witness.

To establish that he was denied the right to the effective assistance of counsel, Petitioner must establish that his counsel's performance was so deficient that he was not functioning as the "counsel" guaranteed by the Sixth Amendment. *Strickland v. Washington*, 466 U.S. 668, 687

(1984). Accordingly, Petitioner must demonstrate that his attorney's actions were unreasonable under prevailing professional norms. *Id.* at 688. In assessing such a claim, however, the Court must "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the [Petitioner] must overcome the presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy.'" *Id.* at 689.

Petitioner must further establish that he suffered prejudice as a result of his attorney's allegedly deficient performance. Prejudice, in this context, has been defined as "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Mahdi v. Bagley*, 522 F.3d 631, 636 (6th Cir. 2008). This is a heavy burden for Petitioner to meet, because he must establish that his counsel's performance was "so manifestly ineffective that defeat was snatched from the hands of probable victory." *Jacobs v. Mohr*, 265 F.3d 407, 418 (6th Cir. 2001).

### 1. Failure to Present a Defense

Petitioner asserts that on February 2, 2001, more than five months before trial, his attorney filed a notice to rely on "diminished capacity/insanity defense and intoxication." Petitioner asserts that his attorney also filed a motion for evaluation for "diminished capacity/insanity and intoxication." Petitioner claims that his attorney rendered ineffective assistance by failing to "take the available steps which would make the defense viable."

Petitioner has failed to articulate what alleged steps his attorney failed to take or how such would have advanced his cause. Petitioner has presented no evidence that a diminished capacity or insanity defense was viable in this matter. Petitioner has also failed to present evidence

that at the time he committed the crimes in question he was sufficiently intoxicated as to constitute a valid defense thereto. In sum, this particular claim is based on nothing more than unsupported speculation. Petitioner has failed to demonstrate that his attorney rendered ineffective assistance. Plaintiff has likewise failed to demonstrate that he suffered prejudice as a result of his attorney's alleged shortcomings. Accordingly, this claim is without merit.

### 2. Failure to Present Expert Witness Testimony

Petitioner asserts that he was evaluated by two psychiatrists concerning the charges in this matter. Petitioner argues that his attorney was ineffective for failing to present testimony from either psychiatrist concerning his criminal responsibility in this matter. Petitioner has presented no evidence that either psychiatrist would have presented any evidence favorable to his cause. Instead, Petitioner merely speculates that questioning these individuals would have advanced his cause. Habeas relief is not available on the basis of such unsupported speculation. In sum, Petitioner has failed to demonstrate that his attorney rendered ineffective assistance or that he suffered prejudice as a result of his attorney's alleged shortcomings. Accordingly, this claim is without merit.

### 3. Failure to Obtain Medical Records for Impeachment

As noted above, Mandell Moore testified that after Petitioner shot him in the neck and hand, he fell to the floor. Moore testified that Petitioner then walked over to where he was laying and fired more shots at him, at least one of which "grazed" him in the head. Petitioner asserts that an examination of Moore's medical records would have demonstrated that he had not been shot

15

in the head as he alleged.  Petitioner argues that his attorney rendered ineffective assistance for failing to obtain Moore's medical records and use such to impeach Moore's testimony.

First, Petitioner has mischaracterized Moore's testimony.  Moore did not testify that Petitioner shot him in the head.  Moore testified that while he laid on the floor, Petitioner fired his weapon at him and that at least one of these shots "grazed" his head.  Petitioner has presented no evidence that Moore's testimony in this regard was inaccurate.  Moreover, even if Moore's medical records established that he had not been "grazed" in the head as he claimed, Petitioner was not prejudiced by his attorney's failure to present such evidence.  The evidence demonstrated that Petitioner shot Moore in the neck and again in the hand.  As Respondent correctly asserts, the fact that Petitioner shot Moore in the neck is sufficient to support his conviction for assault with the intent to commit murder.  *See People v. McRunels*, 603 N.W.2d 95, 102 (Mich. Ct. App. 1999). Accordingly, this claim is without merit.

### 4. Failure to Investigate and Failure to Properly Cross-Examine Witness

Petitioner asserts that "trial counsel was constitutionally deficient in his failure to investigate and his failure to properly cross-examine prosecutions witnesses."  Petitioner has failed to describe what investigation his attorney failed to undertake or how such prejudiced his defense. With respect to defense counsel's questioning of witnesses, the Court recognizes that counsel did not cross-examine any of them at length.  However, such does not by itself constitute ineffective assistance.  Aside from asserting the vague preference that his attorney had asked more questions on cross-examination, Petitioner has failed to describe how his attorney's efforts in this regard were deficient or prejudicial.  In sum, Petitioner has failed to demonstrate that his attorney rendered

ineffective assistance or that he suffered prejudice as a result therefrom.  Accordingly, this claim is without merit.

B.      Motion for Directed Verdict

As previously noted, Petitioner was charged with one count of first degree murder for the killing of Calvin Berry.  At the close of proofs, Petitioner moved for a directed verdict as to this charge.  Specifically, Petitioner argued that because there was insufficient evidence that his actions were premeditated the charge of first degree murder should be dismissed and that the Court instead consider the charge of second degree murder.  (Trial Transcript, July 11, 2001, 89-90).  The court denied Petitioner's motion, finding that "a reasonable trier of fact could possibly find that first degree murder has been committed."  (Tr. 91-92).  Petitioner now asserts that the denial of his motion for directed verdict was improper.

Petitioner is entitled to habeas relief only if he can establish that his conviction and incarceration violates clearly established federal law as articulated by the United States Supreme Court.  Every criminal defendant has a right not to be convicted of a crime unless there exists evidence "sufficient to show beyond a reasonable doubt the existence of every fact necessary to constitute the crime charged."  *In re Winship*, 397 U.S. 358, 363 (1970).  As several courts have recognized, however, "the Supreme Court has never held that the submission of a charge, upon which there is insufficient evidence, violates a defendant's constitutional rights where the defendant is acquitted of that charge."  *Thomas v. Bell*, 2008 WL 268892 at *5 (E.D. Mich., Jan. 29, 2008) (citations omitted); *Olivo v. Lafler*, 2007 WL 1747154 at *3 (E.D. Mich., June 18, 2007) (recognizing that "a number of cases have held that the submission to a jury of a criminal charge

constitutes harmless error where the habeas petitioner is acquitted of that charge") (citations omitted); *Calderon-Hernandez v. Trombley*, 2007 WL 4181274 at *5 (E.D. Mich., Nov. 27, 2007) (same) (citations omitted).

While the trial court denied Petitioner's motion for directed verdict, Petitioner was not convicted of first degree murder, but was instead found guilty of second degree murder. Thus, Petitioner obtained the very thing he requested in his motion for directed verdict. Petitioner cannot establish that the denial of his motion for directed verdict violates clearly established law as articulated by the United States Supreme Court. Accordingly, this claim is without merit.


C.      Sufficiency of the Evidence

Petitioner asserts that with respect to his convictions for second degree murder, assault with the intent to commit murder, and assault with the intent to do great bodily harm less than murder, "the trial judge['s] finding of facts are clearly erroneous." It is clear from Petitioner's argument that he is challenging the sufficiency of the evidence as to these three convictions.

Claims challenging the sufficiency of the evidence are governed by the standard articulated in *Jackson v. Virginia*, 443 U.S. 307 (1979), pursuant to which it must be determined whether viewing the evidence in the light most favorable to the prosecution and according the benefit of all reasonable inferences to the prosecution, any rational trier of fact could have found Petitioner guilty beyond a reasonable doubt. *See O'Hara v. Brigano*, 499 F.3d 492, 499 (6th Cir. 2007) (citing *Jackson*, 443 U.S. at 319-26).

When determining whether there exists sufficient evidence to support a conviction the Court may not weigh the evidence, assess the credibility of the witnesses, or substitute its

judgment for that of the jury.  *See United States v. Paige*, 470 F.3d 603, 608 (6th Cir. 2006).

Furthermore, where the record supports conflicting inferences the Court "must presume - even if it

does not affirmatively appear in the record - that the trier of fact resolved any such conflicts in favor

of the prosecution, and must defer to that resolution."  *O'Hara*, 499 F.3d at 499 (quoting *Jackson*,

443 U.S. at 326).

Under Michigan law in effect as of the date Petitioner committed the acts for which

he was convicted, the elements of second degree murder were: (1) a death, (2) caused by an act of

the defendant, (3) with malice, and (4) without justification or excuse.  *See People v. Bailey*, 549

N.W.2d 325, 331 (Mich. 1996).  Malice is defined as "the intent to kill, an intent to inflict great

bodily harm, or the wanton and wilful disregard of the likelihood that the natural tendency of the

defendant's behavior is to cause death or great bodily harm."  *People v. Hopson*, 444 N.W.2d 167,

169 (Mich. Ct. App. 1989).  Malice may be inferred "from the facts and circumstances of the

killing," *People v. Kemp*, 508 N.W.2d 184, 187 (Mich. Ct. App. 1993), including "evidence that a

defendant intentionally set in motion a force likely to cause death or great bodily harm."  *People v.

Aaron*, 299 N.W.2d 304, 327 (Mich. 1980).

The elements of assault with the intent to commit great bodily harm less than murder

were: (1) an attempt or threat with force or violence to do corporal harm to another (an assault); and

(2) an intent to do great bodily harm less than murder.  *See People v. Parcha*, 575 N.W.2d 316, 318

(Mich. Ct. App. 1997).  This is a specific intent crime, but "[t]he specific intent necessary to

constitute the offense may be found in conduct as well as words."  *People v. Mack*, 317 N.W.2d 190,

193 (Mich. Ct. App. 1981).

Finally, an individual was guilty of assault with intent to murder if the following

elements were satisfied: (1) an assault; (2) with an actual intent to kill; (3) which, if successful, would make the killing murder. *People v. Davis*, 549 N.W.2d 1, 4 (Mich. Ct. App. 1996). The intent to kill "may be proven by inference from any facts in evidence." *Id.*; *see also*, *People v. Price*, 1997 WL 33353593 at *1 (Mich. Ct. App., Mar. 7, 1997) (intent to kill may be inferred from the use of a lethal weapon or "from conduct the natural tendency of which is to cause death or great bodily harm").

The evidence presented at trial was more than sufficient to support Petitioner's convictions for these particular offenses. Accordingly, this claim presents no issue on which habeas relief may be granted.

**II.          Ineffective Assistance of Appellate Counsel**

Petitioner asserts that his appellate counsel rendered ineffective assistance. Specifically, Petitioner asserts that appellate counsel (1) failed to provide him with a copy of the trial transcript; (2) failed to raise clear and obvious issues; (3) failed to investigate; and (4) violated an administrative order issued by the Michigan Supreme Court.

A.          Failure to Provide Copy of Trial Transcript

Even if the Court assumes that the alleged failure by appellate counsel to provide Petitioner with a copy of the trial transcript, Petitioner has failed to demonstrate how such prejudiced his appeal. Accordingly, this claim is without merit.

B.          Failure to Raise Clear and Obvious Issues

Petitioner asserts that his appellate counsel was ineffective for failing to raise the following issues: (1) Petitioner's sentencing guidelines were improperly calculated; (2) trial counsel was ineffective for failing to raise the sentencing guideline issue prior to sentencing; (3) ineffective assistance of trial counsel; (4) improper denial by the trial court of Petitioner's motion for directed verdict; and (5) there did not exist sufficient evidence to support Petitioner's convictions for second degree murder, assault with the intent to commit murder, and assault with the intent to do great bodily harm less than murder.

The first two issues identified by Petitioner *were* asserted on Petitioner's direct appeal. As for the other three issues, as discussed above, such are without merit. Thus, counsel was not ineffective for failing to assert such on appeal. Accordingly, this claim is without merit.


C.      Failure to Investigate

Petitioner asserts that his appellate counsel was ineffective for failing to (1) perform sufficient research, and (2) conduct an independent investigation into this matter. Again, even if the Court assumes that such conduct constituted deficient performance, Petitioner has completely failed to demonstrate that such prejudiced his cause. Accordingly, this claim is without merit.


D.      Violation of Administrative Order

Petitioner asserts that his appellate counsel violated an (unspecified) administrative order from the Michigan Supreme Court. Petitioner asserts that as a result "he was never given a[n] opportunity to put forth any insight into his own appeal process." Again, even if the Court assumes that such conduct constituted deficient performance, Petitioner has completely failed to demonstrate

that such prejudiced his cause.  Accordingly, this claim is without merit.

**CONCLUSION**

For the reasons articulated herein, the undersigned concludes that Petitioner is not being confined in violation of the laws, Constitution, or treaties of the United States. Accordingly, the undersigned recommends that Weston's petition for writ of habeas corpus be **denied**.

OBJECTIONS to this Report and Recommendation must be filed with the Clerk of Court within ten (10) days of the date of service of this notice. 28 U.S.C. § 636(b)(1)(C). Failure to file objections within the specified time waives the right to appeal the District Court's order. *Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).

Respectfully submitted,

Date: November 12, 2009          /s/ Ellen S. Carmody
ELLEN S. CARMODY
United States Magistrate Judge